[No. 1651.]

# FRANK GOLDEN, RESPONDENT, *v.* J. C. MURPHY, WILLIAM BEYERS, AND THE ROYAL MINING COMPANY, APPELLANTS.

MINES—LOCATORS' RIGHTS—NEW TRIAL—APPEAL—REVIEW—TRIAL COURT'S DECISION—CONFLICTING EVIDENCE.

1. Though small pieces of quartz, narrow seams, and little pockets of ore embodied in porphyry be sufficient to sustain a location, the locator has no greater rights against veins apexing on other claims than if his location were based on a well-defined ledge, and has no right to veins existing between walls apexing in other locations, on the theory applied to blanket ledges, and prevailing in regard to others under the civil law.

2. Where, on appeal from an order granting a new trial in an action for damages for extraction of ores within the lines of plaintiff's location, it appeared from the trial court's decision that his order might have been based on the ground that the verdict was contrary to the evidence and on his own observation of the premises, but the former ground was sufficient to sustain the order, a contention that the court was not warranted in considering its own views, based on an inspection of the premises, was unavailable.

3. On appeal from an order granting a new trial on the ground that the verdict was not warranted by the evidence, the action of the trial court will not be disturbed where there was a material conflict of evidence.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Lyon County; *B. F. Curler,* Judge.

Action by Frank Golden against J. C. Murphy, *et al.* From an order granting a new trial, defendants appeal. **Affirmed.** Petition for rehearing denied.

The facts sufficiently appear in the opinion.

*Alfred Chartz,* for Appellants:

I. The main points relied on by appellants are: (1) The decision of the court and order granting a new trial is based upon an erroneous construction of the law applicable to the evidence in the case; (2) The court has misstated and misconstrued and misunderstood the evidence; (3) The court abused its discretion in granting a new trial; (4) If the verdict had been for plaintiff, the great weight of the evidence in behalf of defendants is such that a new trial would be granted thereon.

Now, then, for the purposes of this argument and this

appeal, and in support of the first assignment of error that the decision of the court is based upon an erroneous construction of the law applicable to the case, let us admit that the superimposed mass within the patent is only locatable and would only support a location. The court admits that much, and plaintiff's witnesses admit it without the slightest equivocation. The question naturally arises from the premises stated, Can plaintiff have any extralateral right within such material? Must there not be some separation between such material and the mythical vein greater and more substantial than the separation between two books, one on top of the other, or between the leaves in a book? True, two or more veins may exist within a mineralized zone, but if these vein formations come together, the older location takes from the top or junction down, and in no case has it ever been held that a formation locatable in itself, and sufficient to encourage a miner to expend his time and money in its development, can be invaded by another formation of the same caliber. There can exist no extralateral right against a vein, and there can be no extralateral right against a mineral formation, locatable under the mining laws of the United States, because any formation sufficiently mineralized to coax the miner to expend his time and money in its development in the hope of reward, is a vein, under all definitions, except Judge Curler's. Any such formation being a vein, how can an independent vein exist within it, having independent, distinct and separate rights? If such a monstrosity can exist in the law, which has the superior right, the locatable formation, which is prior in time, or the junior formation which can be traced and which is separated by nothing, like two books, one on top of the other?

II. The mining laws of the United States grant to the discoverer of a vein, whether it be rich or poor, thick or thin, and no matter how it got there, if it is sufficiently mineralized to encourage him to devote his time and money in its development, the right to locate the same, and upon application, and a proper showing of the necessary amount of expenditure of money tending towards its development, and the proper observance of the procedure prescribed, will grant its patent for the same, and that is exactly what defendants'

predecessors and grantors did and got from the government. Can there, and does there, exist any right, extralateral or otherwise, against this grant? The entire superimposed mass is locatable, holdable, patentable. Above the hanging wall and below the foot wall the same formation is found. Could a junior appropriator appropriate a different current in a stream of water and hold it against a prior appropriator who had appropriated and used the entire body of the stream? Streams of water flow within other streams, just like ocean currents. The court has found, and the evidence is undisputed, that the formation on the patent is locatable, and this formation, under the law, is a vein, and this vein, according to the testimony of all the witnesses for plaintiff, goes right down to the top of that formation which they call the Canyon vein. Defendants' witnesses assert positively that there is no separation whatever.

However, for the purpose of the argument, let us say that the two formations come together, just as one would place two books, one on top of the other, and what is the law applicable under such state of facts? It is submitted, that where two vein formations come together, that the older location takes from the point of junction down, and instruction No. 8, objected to by plaintiff, was drawn to fit plaintiff's testimony in that particular. There need be no intermingling of their ores, like a carpenter would join a fine piece of woodwork. It is sufficient if they come together. The decisions are that the vein must be clearly separated from the "country rock" and from other vein matter, which is as locatable under the law as the alleged vein. So, under the court's own finding, this is not a case of two separate veins, distinct one from the other within a mineralized zone or vein formation, but it is two vein formations meeting in their downward course. Defendants dispute the court's theory, and claim, as the testimony shows, that it is all one single formation, impressed with the same forms, coming from the same source and created at the same time. But, taking the court's own view of the case, it is evident that the court erred as to the law applicable to the facts that he finds, and that a new trial should not be granted, as the verdict of the jury is eminently correct, based upon the

court's own findings of facts, to say nothing of the great preponderance of the testimony showing that the apex of the vein is within the patented lines in part, and in part within the Canyon claim.

The following authorities are here quoted and cited to the court in support of the foregoing: *Iron S. M. Co.* v. *Cheeseman*, 116 U. S. 529; *U. S.* v. *Iron S. M. Co.*, 128 U. S. 673; *Hyman* v. *Wheeler*, 29 Fed. 347; *Illinois S. M. Co.*, v. *Raff*, 7 N. Mex. 336, 34 Pac. 544; *Beals* v. *Cone*, 27 Colo. 473; *Buffalo Zinc and Copper Co.* v. *Crump* (Ark.) 69 S. W. 572.

In *Stevens* v. *Williams*, 1 Morr. M. Rep. 557, Fed. Case No. 13,414, is found the following by Judge Hallett: "As to the words 'vein or lode,' it seems to me that these words may embrace any description of deposit which is so situated in the general mass of the country, whether it is described in one way or another; that is to say, whether, in the language of the geologist, we say it is a bed, or gash vein, or true fissure vein or merely a deposit. * * * Whenever a miner finds a valuable mineral deposit in the body of the earth, in place, he calls that a lode, whatever its form may be, and however it may be situated, and whatever its extent in the body of the earth."

In the case of *Iron S. M. Co.* v. *Mike and Starr G. & S. M. Co.*, 143 U. S. 394, their position was violently assailed on the ground that any impregnation to the extent to which it may be traced as a body of ore did not constitute a lode within the meaning of sections 2320 and 2333 of the Revised Statutes, but the judgment was affirmed, with three judges dissenting on the ground that the testimony was insufficient to establish the existence of a known lode. This reasoning cannot apply in the case at bar, because the court, under the pressure of the unanimous testimony in the case, admits that the formation on the surface of the patent is locatable, and, if locatable, it is a lode, and if it is a lode, junior locators have no extralateral rights against it, under any conceivable construction.

III. Now, taking the testimony of plaintiff, and all his witnesses, when asked to point out a single place on either their alleged foot or hanging wall where Murphy could not reveal ore in a few minutes with a pick, and their failure to

do so, or to deny, and the answer of plaintiff that you can find quartz seams all through that country, positively and unequivocally impresses its character as one great lode. This is not a case, as stated by the lower court in its decision on the last page, as follows: "The fact that back of the hanging wall in this disintegrated mass of country rock small seams or fissures should be found containing gypsum and ore does not destroy the integrity and continuity of plaintiff's vein." It is a case of generally mineralized formation from top to bottom, having its own integrity and continuity, locatable under the laws of the United States, and entitled to their protection.

IV. It is not necessary that the boundaries of a vein should be ascertained; they will be presumed to exist somewhere. (*Beals* v. *Cone*, 27 Colo. 473, citing long list of authorities.) Nevada has accepted Dr. Raymond's definition that a lode is whatever a miner could follow and find ore.

V. A junior locator along the line or top of apex cannot prevail against a senior on the dip of the lode. (*Van Zandt* v. *Argentine M. Co.*, 8 Fed. 725; Morrison's Min. Rights, 8th ed. p. 127.) In the case at bar it is submitted that the side line common to both claims, being the west side line of the patent, passes through a locatable, mineralized formation, and this fact would deprive plaintiff of extralateral right, being a junior locator.

VI. From the testimony of Mr. Moran, with reference to the formation on the patent, undisputed by any witness, and much strengthened by the evidence of the miners who testified for defendants, it is patent that the court erred in point of law in granting a new trial, and misunderstood and misstated the facts in its opinion, and on that alone the order granting a new trial should be reversed and the judgment ordered to stand. It is claimed that no extralateral right can exist against a formation such as Mr. Moran describes. The conclusions to be drawn from his statements of facts are far different from his expressed judgment about the vein apexing in Canyon ground, and the patent having no apex. It may be true that a vein may have sidereal impregnations, but it is submitted that, if the sidereal impregnations extend

to the surface, and they are located as a mineralized formation, the locator will take the vein when he gets down to it.

*Torreyson & Summerfield*, and *W. E. F. Deal*, for Respondent:

I.   The evidence showed without any substantial conflict that there is a gold and silver-bearing quartz ledge which extends from a point about 300 feet north of the southerly end line of the Canyon claim, through the Canyon claim to its north end line, into the Silver Leaf claim, the next adjoining claim on the same ledge. It also appeared, without any substantial conflict in the testimony, that the ore in dispute was taken by the defendants, Murphy and Beyers, from the dip of the ledge above mentioned. It appears by a great preponderance of the testimony that the vein from which the ore was taken by the defendants has its apex entirely within the surface boundary lines of the Canyon claim from a point about 300 feet from the southerly end line of that claim to a point where the ledge passes through the north end line of the claim into the Silver Leaf claim. From the testimony of the witnesses for the plaintiff it was clearly shown that the vein from which came the ore in question has its apex in the Canyon claim; that it extends at least 1,000 feet through the claim at the surface; that its foot wall and hanging wall are exposed at various points at the surface and in works underground and within the surface boundary lines extended downward vertically, to which the witnesses testified, and which are marked on plaintiff's map; and that the vein extends from the surface of the claim, between such walls, to and including and below the point from which the ore in dispute was taken.

II.   All of the witnesses for the defendants understood that, to constitute either wall of a vein, there must be solid country rock without any quartz in it.

III.   The workings from the surface of the Canyon claim, to and including the stope from which the ore in dispute was taken, show the dip of the vein. The stopes are met with from which ore has been mined and milled from the surface to the stopes of ore here in question, and the existence of these stopes, with the proof that ore has been taken from

them, independent of any other testimony, go far to prove
the dip of the ledge; and, even if no walls could be seen as
testified to by defendants' witnesses, the fact of the existence
of this ledge, and its continuity from the surface to the stope
in question, proves the walls of such ledges. (*Iron S. M. Co.
v. Cheeseman*, 116 U. S. 536.) All of the witnesses on both
sides agree as to the existence and continuity of the ledge
from which the ore was taken from the surface of the Canyon
claim to the body of ore in dispute, but they differ as to the
walls of this ledge. The witnesses for the plaintiff state
positively as to the walls and as to the place where they are.
The witnesses for the defendants, though they say the vein
must have walls, cannot say where they are, but they do say
they are not in the Canyon claim. They say that what the
witnesses for plaintiff call walls are not walls, because, in
their judgment, a wall must be solid country rock, and that
the walls testified to by plaintiff's witnesses are not walls
because they are not in solid country rock, and that if you
dig further into the earth you will find quartz. It is evident,
as has been said, that some of the witnesses call the mass of
the mountain, through which the ore was taken from the
Canyon claim, all one vein; that they confound country rock,
which contains enough mineral either in broken-up earth or
small seams to support a location, with the ledge itself in the
country rock. It is not necessary that the walls of a ledge
be seen. The record shows that the walls of the ledge in the
Canyon claim are seen and the places where they are seen,
but this is not necessary to constitute a vein with boundaries.
(*Hyman* v. *Wheeler*, 29 Fed. 354.)

IV. The evidence in this case is so greatly preponderated
in favor of respondent that it would have been an abuse of
discretion in the district court if it had refused to grant the
motion for new trial. The record shows that, though no
such thing is necessary to be shown in support of the order
of a district court granting a new trial. When the *nisi
prius* court does grant a new trial, the appellate court will
not interfere unless the weight of the evidence clearly pre-
ponderates against the ruling of the court. (*Treadway* v.
*Wilder*, 9 Nev. 70–71; *Nutting* v. *Cutts*, 8 Nev. 121; *Law-
rence* v. *Burnham*, 4 Nev. 365; *McLeod* v. *Lee*, 14 Nev. 400;

*Oullahan* v. *Shattuck*, 21 Cal. 413; *Phillpotts* v. *Blasdel*, 8 Nev. 76; 58 Cal. 306–308; 39 Cal. 565; 71 Cal. 222; 72 Cal. 179; 79 Cal. 407; 46 Cal. 579; 67 Cal. 124; 85 Cal. 377; 92 Cal. 501–61; 56 Cal. 306–8; 101 Cal. 414; 104 Cal. 83; 105 Cal. 173–179–411; sec. 3292, Comp. Laws, p. 684; *Beck* v. *Thompson*, 22 Nev. 121; *Watt* v. *Nev. Cen. R. R. Co.*, 23 Nev. 171.) There was no error in the action of the district court in granting a new trial in this case, as abundantly appears from the record; and the order appealed from should be affirmed.

*Alfred Chartz*, for Appellants, in reply:

I.   By industrious picking of sentences and clauses in sentences respondent seems to have found justification in claiming that defendants have advanced three irreconcilable theories.   On this question it is submitted that all of the defendants' witnesses agree that the vein formation is wider than the Canyon location; that it apexes on both claims; that the formation crosses the mutual side line on its strike as shown by the stratification of the rocks; that the blue porphyry divides the formation at a given point; that from the ore body in dispute to the surface of the patent one can follow through stopes and vein matter all the way, and there is no separation of any kind, but a gradual shading from poor into richer rock.   It is noticeable that, with respect to the many faults hinted at by respondent with reference to conflicting theories, there is not one single intimation with reference to the formation and the testimony of defendants' witnesses on that point from the ore in dispute to the surface of the patent.   While I disclaim that there is any conflict of testimony on the part of defendants' witnesses on any matter whatever, I claim that if they did in fact disagree about every other point, so long as they agree that any one can start from the ore in dispute, and go through stopes and winzes and remain in ore and vein matter all the way to the surface within the patent lines, that all other questions are utterly unimportant, and defendants must prevail.   So far as defendants are concerned the several facts which grant extralateral right are not involved.   If they have apex, that is the end of it.   Not so with plaintiff.   He must not only have apex of the ore in dispute, but he must have the only

apex, and the whole of it, and his vein must not cross the mutual side line longitudinally or on its strike, but on its dip, at right angles from the ore in dispute. (*Southern Nevada G. & S. M. Co.* v. *Holmes Mining Co.*, 27 Nev. 107, and authorities therein cited.)

II. "An assignment that the verdict is not sustained by the evidence cannot be considered if the plaintiff in error has not asked, at the close of his whole evidence, for the direction of a verdict in his favor." (3 Desty's Fed. Pro. p. 1562; 70 Fed. Rep. 219, 225; 62 Fed. Rep. 383.)

III. It is here submitted that the lower court granted a new trial according to his definition of legal rights, and if the lower court has erred about that, the order must be reversed. Appreciable values have nothing to do with what is or what is not a vein. It makes no difference whether the rock is rich or poor—if it is sufficient to encourage the miner to expend his time and money in the hope of reward, he is entitled to his location and to a patent if he pursues it. Walls are not necessary; they are supposed to exist somewhere. If he has his walls with unaltered country rock on each side, it requires less evidence to prove the fact that he has a vein or mineral deposit, but if they are not in sight, the fact that he is working within mineralized rock in place is sufficient.

IV. Respondent's brief says that the trespass was a willful one. It is here admitted that the act of taking out the ore was willful and with full knowledge of all the facts. The evidence shows that Murphy and Beyers are experienced miners, and knew the Canyon and the patent like a book, with the exception of the fact that they were not certain about the location of the mutual line; but they did know the ore they took out was within the patent. The evidence further shows that while Murphy was working under a lease from plaintiff, within the Canyon, plaintiff visited him in the mine, and Murphy told him he believed they were already across the line, and plaintiff told him not to go any further. After plaintiff sued his copartner for partition of the Canyon, Murphy and Beyers took a lease of the patent, and sunk Murphy Shaft No. 1, and run the crosscut from it, and the northeast and southwest drifts, and found the ore in dispute. They knew that the formation crossed the mutual side line

on its course, and not on the dip, and they knew the ore apexed on the surface of the patent, being well acquainted with the Cardew cut and all the openings on the surface, and that is why they did it. They could not reach that ore through plaintiff's tunnel "A," having no right to enter there. If plaintiff believed that the ore was his at the time of the partition, or after that suit was settled, why didn't he extract it himself? He had plenty of time. Murphy and Beyers had to work a long time before they could prospect in that section. The statement that they went straight to that ore is not true. The northeast drift was run before that. They were enjoined as soon as the ore in dispute was milled, and were drifting on the west crosscut, with the blue porphyry as their objective, believing they would find ore near it, and that is in the very country that plaintiff calls his footwall country.

V. It is respectfully submitted that no extralateral right exists against such formation as overlies the ore in dispute; that the formation crosses the mutual line on its course; that the mineral deposit apexes within the patent as well as within the Canyon claim; that the evidence overwhelmingly preponderates in favor of defendants on the foregoing stated propositions.

ON PETITION FOR REHEARING.

*Alfred Chartz*, for Appellants:

I. It is an admitted fact by both the lower and upper court that the mass which overlies the so-called Canyon vein within the patented ground is locatable. Under the authorities it makes no difference how it got there, or whether it is rich or poor. It is therefore as "regular" as any vein with well-defined walls composed of unaltered country rock for any distance on either side. The act of Congress of May 10, 1872, and also the act of July, 1866, granting to the discoverer and prior locator of a vein or mineral deposit in place, bearing gold and silver and other precious metals, does not use the word "regular" in its grant or right. If, after discovering mineral-bearing rock in place, locatable by prosecuting a suit in the United States Land Office on application for patent, the land is patented to him, and he becomes the owner in fee as against the United States and all the world, his

location becomes entitled to the same protection as the locator of any better defined vein.   Therefore, the question of well-defined veins or mineral deposits does not and cannot enter in the decision of conflicting claims of rights.   The decisions are not given to those who own the best defined veins, and have the best walls, because walls are not mentioned in the acts of Congress on that subject.   If an owner shows walls, he needs less other proof to show that he has a vein than one who has no walls; but it is here admitted on all sides that the mineral formation overlying the so-called Canyon vein is locatable.   Now, what law follows from that fact?   It is submitted that that question has not been decided, and therefore this petition.   A vein with well-known defined country rock on both sides is a mineral formation the same as any other mineral formation the extent of which and the location of the inclosing walls of which are not known.   They both stand on the same plane, because inclosing walls will be presumed to exist somewhere.   It is the fact, undenied and undeniable and admitted, that the formation on the patent meets the formation on the Canyon on their course downward, and it is submitted as matter of law, under authorities cited in appellants' briefs, and as instructed by the court in defendants' instruction No. 8, that, where two veins meet in their course downward, the older location takes from the point of junction down, and it is proved and admitted that the patent is the older location by a great many years, and the maps and all the testimony shows that the ore in dispute is below the point of junction.

II.   Under all our reading of geology and vein formation, it is submitted that one vein cannot lie on top of another, like two books, and that a vein cannot ooze and spill and slough over itself so as to create the hanging wall, which seems to be the theory of the plaintiff.   Veins that are separated like two books, one on top of the other, must have been created at the same time and formed by the same processes.

By the Court, TALBOT, J.:

This action was brought to recover $7,000 damages for the extraction of ores by the individual defendants within the exterior lines, extended downward vertically, of the Table

Mountain mine, upon a part of which they held a lease from the owner, the Royal Mining Company, and for an injunction restraining them from further working upon the ledge which plaintiff claims has its apex in the Canyon mining claim owned by him. The case was tried with a jury, and a verdict rendered in favor of the defendants. This appeal is upon an order granting a new trial on the ground that the verdict is not in accordance with the evidence. In the decision on the motion for a new trial the district judge states:

"The evidence further shows, without a substantial conflict, that a lode or vein exists in said Canyon mining claim, which extends from a point about 300 feet north of the southerly end line of said claim, northerly in its course from said point about 1,000 feet, and passes through the north end line of the said Canyon mining claim; and that the apex of said lode at the surface, for the distance of about a thousand feet, is within the exterior boundary lines of said Canyon mining claim described in the complaint. The evidence shows that the ore in dispute was extracted by Murphy and Beyers from a point within the exterior lines of the Table Mountain mining claim, extended downward vertically, and being that portion of the claim held by them under a lease. The evidence further shows that some time, within a few years, prior to the taking of the lease by Murphy and Beyers from the Table Mountain Mining Company, they had a lease from the plaintiff and his predecessors in interest of the Canyon mining claim, and extracted ore from a stope within a few feet of a point where the ore in dispute was extracted. The evidence further shows, without conflict, that communication in ore in place has been made from the point where the ore in dispute was extracted and the stopes worked by Murphy and Beyers under the lease of the Canyon mining claim.

"The testimony further shows, without any conflict, that the ledge upon the Canyon claim can be traced upon the surface from the point where it crosses the side line of the Canyon claim about 300 feet north of the southerly end line of said claim through said mining claim northerly in its course from said point about 1,000 feet, where it passes through the north end line of said mining claim. The evi-

dence shows, without any conflict, the matter having been
testified to by practically all of the plaintiff's witnesses and
a great number of the defendants' witnesses, that the ore
body from where it apexes on the surface of the Canyon
mining claim can be followed in drifts, tunnels, and inclines
clear to the point where the ore in dispute was taken out, and
that three different routes can be followed, all in ore, from
the surface of the Canyon claim to the point where the ore
in dispute was taken out. The evidence shows conclusively
the continuity of the vein in the Canyon ground from the
apex on the surface to the point where the ore was extracted
by the defendants Murphy and Beyers. This proposition
was practically admitted by the defendants and their wit-
nesses upon the trial of the case.

"The defenses made by the defendants in this action were
three in number, and, in the judgment of the court, abso-
lutely antagonistical one to the other. One contention was
that, running in a northerly direction, there existed a lode,
the apex of which was wider than both claims. Another
defense was that the vein testified to by the plaintiff's wit-
nesses as existing within the lines of the Canyon claim split
at a point near the northerly end line of the Canyon claim,
a portion of the vein passing on through the northerly end
line of the Canyon claim, the other passing through the side
line of the Canyon claim into and across the Table Mountain
claim, and that the ore in dispute was extracted from that
portion of the split vein after it passed the side line of the
Canyon claim into the Table Mountain claim. The other
defense was that the strike of the vein was across the Table
Mountain and Canyon ground. Witnesses of defendants
testified in support of each one of these theories. * * *

"It is undoubtedly true that the surface of that portion of
the Canyon mining claim on the slope of the hill below the
apex of the Canyon vein, and the surface of the Table Moun-
tain claim which is lower than the Canyon claim, contain
more or less mineral. It may be, and probably is, such
ground as would sustain a mineral location, but that is not
the question that was to have been determined by the jury
in this case. The question to be determined by the jury was
as to whether the ore in dispute was in a vein whose apex

was within the Canyon claim or the Table Mountain claim, and the determination of that question, if it ever entered into the deliberation of the jury, was contrary to the great weight and preponderance of the evidence. * * * A careful inspection of that winze by the court, with the jury, convinced the court that no ledge or seam was followed by that winze continuously to the point from which the ore was taken, and that no seam exists, the top of which is in the Table Mountain claim, which continues to the ore body in question. The country passed through seems to be, as the court has before said, a mass of country rock, porphyry, which had been disintegrated, and small fissures formed in width from the thickness of a thin knife blade to two or three inches, these fissures being filled with gypsum and ore from that sloughed off from the Canyon vein.

"The burden rested in the first instance upon the plaintiff to establish the existence of a vein whose top or apex was in the Canyon claim, and to demonstrate that that vein continued on its dip to the point from which the ore was taken out. That proposition, in the judgment of the court, was, by the workings of the plaintiff, absolutely and conclusively demonstrated; and not only was the continuity of the ore body established by the different workings of the plaintiff, but in numerous places that which was undoubtedly the hanging and footwall of the vein was exposed. The fact that, back of the hanging wall in this disintegrated mass of country rock, small seams or fissures could be found containing gypsum and ore, does not destroy the integrity and continuity of plaintiff's vein. In the neighborhood of every large vein, particularly where much erosion has taken place, small seams and fissures of gypsum and quartz containing ore must necessarily exist, for if by disintegration crevices are formed, and the vein and ore body is sloughed off, by the processes of nature these crevices will be filled with the gangue of the vein, containing more or less mineral."

On behalf of appellants it is urged that the order granting a new trial is error, because an invasion of the province of the jury, even if the evidence is conflicting; that the court was unwarranted in considering its own views gained from an inspection of the premises; and that under the testimony

of the witnesses of the plaintiff, as well as of those for the
defendants, the mass above the point of extraction of the ore
in dispute contained seams of ore and impregnations of min-
eral sufficient to make it locatable, and that therefore the
owners of the Table Mountain are entitled to all ore within
the boundaries of the claim, extended downward vertically.
Several experts of long experience, and practical miners,
testified for the plaintiff that the ore was taken from a place
under the surface of the Table Mountain mine in a vein with
well-defined walls which apexed on the Canyon claim. Others,
for the defendants, testified that the ledge was wider than
both claims, and in different ways contradicted the theory
advanced for the plaintiff; and, if they agreed that the for-
mation above the place of extraction contained small pieces
of quartz and mineralized seams, they still disagreed regard-
ing the important and controlling fact as to whether the ore
was taken from a vein existing between defined walls apexing
on the Canyon. If small pieces of quartz, narrow seams, and
little pockets of ore embodied in porphyry be deemed suf-
ficient to sustain a location, we do not understand that they
give the owner any greater rights against veins apexing on
other claims dipping under this ground than he would have
if his location were based upon a substantial and well-defined
ledge. In either case he would be entitled to all veins which
apexed within the boundaries of his claim, and in neither
would he have any right to those existing between walls
apexing in the locations of other claimants, on the theory
applied to blanket ledges, and also prevailing in regard to
others under the Civil Law. It is not difficult to discern
between that which is essential to a valid location and the
rights which it bears, and, if the witnesses substantially
agree as to the former, they materially differ regarding the
latter, which was essential, and was properly considered by
the trial judge. We have quoted enough to show that his
order may be considered as having been placed upon the two
grounds that the verdict was contrary to the weight of the
evidence and to his own observations in these mines. The
former of these being sufficient to sustain the order, we need
not determine regarding the latter.

It was held in *Worthing* v. *Cutts*, 8 Nev. 121, that, when a

new trial is granted in the lower court upon the ground that the verdict is not warranted by the evidence, the rule invariably governing the appellate tribunal is not to disturb the action of the judge below if there is a material conflict in the evidence. In *Treadway* v. *Wilder*, 9 Nev. 70, this court stated: "It must be borne in mind that the *nisi prius* courts, in reviewing the verdicts of juries, are not subject to the rules that govern appellate courts. They may weigh the evidence, and, if they think injustice has been done, grant a new trial, where appellate courts should not or could not interfere. The question under consideration has been so often presented that opinions have become stereotyped. Nothing need be added to, or taken from, the rule, so well established, often declared, and always followed." The numerous cases in this state and California cited in respondent's brief, and Hayne on New Trial and Appeal, sec. 97, and Hilliard on New Trials, p. 488, are to the same effect.

The order of the district court granting a new trial is affirmed, with costs in favor of respondent.

BELKNAP, C. J., and FITZGERALD, J., concur.

## ON REHEARING.

By the Court, TALBOT, J.:

In a petition for rehearing appellants urge: "That it is an admitted fact, by both the lower and upper court, that the mass which overlies the so-called Canyon vein within the patented ground is locatable. * * * What law flows from that fact? It is submitted that that question has not been decided, and therefore this petition. * * * The fact that the vein formation called the Canyon vein in its course downward crosses the common side line of the Canyon claim and the patent, and is there met by the vein formation which apexes on the patent, being unalterably fixed and determined by the testimony and the admissions of the court, it is respectfully submitted to the appellate court that there is nothing left to said court but to decide what is the law that follows from said fact. Admit, for the purpose of the argument, that there is a vein which enters the side line of the Canyon, yet it is admitted that said vein on its course downward meets the patent vein or vein formation at the point

where it crosses the side line, and from that point down it is submitted that the older location takes under the law and the authorities already submitted."

In the opinion we endeavored to cover this contention, which was made by counsel on the hearing on appeal, but it seemed that the position of the court is not understood, and that a broader admission of fact is assumed than was actually made. It may be inferred from the allegations of the petition that counsel believe that this court conceded that the whole mass within or lying under the boundaries of the Table Mountain mine is ledge matter, and in legal effect a vein to the extent of its entire width, as contended for by appellants in both courts. No such admission was made, and witnesses for the plaintiff, and the district judge, denied directly that such was the fact. It was allowed that the small pieces of quartz and gypsum and little stringers of ore from the thickness of a knife blade to two or three inches might sustain a location, but, if so, they would not give the owners any greater right to veins dipping under their ground and apexing beyond it than they would have if their location were based on a substantial and well-defined lode. It is contended that the whole mass is only the part of a vein. While following the testimony on behalf of plaintiff, and the views and conclusions of the district judge expressed in the order granting a new trial, the admission does not go further than to concede that the formation is porphyry and country rock, impregnated in places with these little stringers and small pieces of gypsum and quartz lying above the walls of a ledge apexing in the Canyon claim.

The petition for a rehearing is denied.

BELKNAP, C. J., and FITZGERALD, J., concur.